HEATH v. CALKINS.

NEGLIGENCE—DRUGGISTS—EXPLOSIVES.

> Where an employé of the defendant, a druggist, was injured in an explosion of flash-light powder furnished by his employer, and the testimony tended to show that the powder which defendant claimed to have furnished would not have been dangerous, an inference might be drawn that the powder in fact furnished was not that claimed by the employer, and should have been submitted to the consideration of the jury. GRANT, OSTRANDER and BROOKE, JJ., dissenting.

Error to Washtenaw; Kinne, J. Submitted January 18, 1909. (Docket No. 20.) Reargued June 14, 1909. Decided July 6, 1909.

Case by Homer L. Heath against Eleazer E. Calkins for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Frank A. Stivers* and *Homer R. Mallow* (*M. J. Lehman*, of counsel), for appellant.

*Blum & Sample* (*Arthur Brown* and *Edson R. Sunderland*, of counsel), for appellee.

HOOKER, J. The defendant was a druggist. He was also engaged in the business of photography, especially that of taking flash-light pictures. The pictures were generally taken by one Thomas, assisted by the plaintiff, who usually operated the flash light. Both were employés of the defendant. On the occasion of the accident which led to this action, the defendant procured some flash-light powder supposed to be similar to, if not identical with, that generally used by him. The manufacturer testified that it was identical with it, and there is no testi-

mony, aside from the fact of the accident, tending to contradict such statement, unless it be the fact that it was called by a different name, which was explained. It appears to be conceded that the flash-light powder theretofore used had never appeared unsafe. It had been the practice to mix magnesium with such powder, which was usually, if not always, furnished by the defendant, " or whoever was in his store," to Thomas, who mixed it with the powder. This was to get a maximum amount of light, and they were mixed in equal proportions. It was the practice to mix it in the store on the scales. There was evidence that the addition of magnesium to the powder would not tend to make it explosive, that it would give no such property to the flash-light powder, and this testimony was uncontradicted. Thomas testified that on this occasion the defendant personally gave him the powder. He does not say who gave him the magnesium unless it is to be inferred from the statement:

" Mr. Calkins furnished me the powder which I used in making my preparation for the flash light. He furnished it to me personally, and I mixed it in the store as usual. * . * * I took this powder and mixed it exactly the same way as I had always done, equal parts of the magnesium and the powder."

This was uncontradicted. The use of this powder was accompanied by a violent explosion, and plaintiff lost his hand. The defendant claims that this is conclusively shown to have been a safe powder; that magnesium was used with it; that magnesium could not cause the mixture to be explosive. His counsel therefore contend that the explosion is a mystery, and that it is not shown that he has been negligent. It is also said that in furnishing powder procured from a reputable dealer he discharged his whole duty. The trial judge directed a verdict for the defendant, and plaintiff has appealed.

It is a self-evident proposition that this mixture exploded. It is therefore a natural, though perhaps not an

inevitable, inference that the explosive property should
be sought in the powder itself, or in the ingredient itself,
or, if in neither alone could it be found, then in the
combination of the two ingredients. Was there any
evidence from which an inference could be drawn which
it was ? Under the evidence, the powder was not explo-
sive, the magnesium was not explosive, and the combi-
nation of the two in equal parts would not be, and never
had been within the parties' experience, explosive. If the
jury were convinced of these things, they would naturally
suspect that some mistake was made, and that magnesium
or flash-light powder was not used, but some other powder
or mixture more harmful. The testimony on this subject
might be more satisfactory. If Thomas' testimony will
bear the construction that defendant personally delivered
to him both ingredients, about which minds might differ,
it does not unequivocally show that one was magnesium,
while the defendant is silent upon the subject. We are of the
opinion that there is evidence in this case from which the
jury may have found that this explosion was due to the
flash-light powder, though the weight of the testimony on
this record was clearly and strongly against it. Whether
the defendant could be said to be negligent, in view of the
source from which he purchased, we need not decide,
because it was competent for the jury to find that the ex-
plosion was caused by the other ingredient, and that,
magnesium not being explosive, or capable of making the
mixture explosive, it must have been something else, and,
if so, and it was negligently furnished by defendant him-
self, or his drug clerk, he might be liable, while, if pro-
cured by Thomas himself, the question of negligence of a
fellow-servant might perhaps be controlling, a point we
do not decide.

Counsel contend that this explosion might have been
due to other causes, as that the bottle with powder in it
might have been left in the pan, and, being confined, an
explosion resulted, while, had it been properly used, there
would have been no explosion, and that color is given to

this theory by the fact that the bottle was never found. Other causes are suggested, such as that too much powder was used, or the wrong bottle taken by Thomas by mistake. If there was evidence tending to show any of these, they were legitimate inquiries for the jury, and if each of these causes was as probable as any of the others, the learned circuit judge was right. Whether there was evidence tending to prove all of these, we cannot say. We think not, but we do think that there is testimony from which a juror might reasonably believe that a substitute for magnesium was used through defendant's error or that of his clerk, and it was for the jury to say whether, under the proof, this was the more probable theory. If they could not say that, they would be unable to reach a verdict for plaintiff on that theory, for the plaintiff should not recover upon proof of facts equally as consistent with the absence of negligence on the part of defendant as with it. In some cases we can say that of testimony. In others, it is of necessity a question for the jury. We think that this case belongs to the latter class.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and MONTGOMERY, MOORE, and MCALVAY, JJ., concurred with HOOKER, J.

GRANT, J. (*dissenting*). I am unable to concur in the result reached by my Brother HOOKER. There is little, if any, conflict in the evidence. The cause of this explosion, like many another involving the use of explosive chemicals, rests in doubt. There is no evidence by which a jury can fasten the responsibility therefor upon anyone. The powder purchased was a standard article of commerce, used in taking flash-light photographs. It was purchased from a reputable firm in Chicago. It was manufactured by one Frank, who had manufactured the same article for years. The manufacturer sold it in the name of "Magic Powder." The Chicago firm desired to use it in the name of "Ideal Powder," and had made arrangements with the manufacturer to so use it. The

testimony was undoubted that it was the same as that sold under the label "Magic Powder." No instance is shown that the powder ever before exploded with such force. The manufacturer testified that he had always tested the powder, that it was ready for use, and that no further test by the photographer was necessary. There was therefore nothing to indicate that this identical box of the material was composed of any other than the usual chemicals in the proper proportions, except the fact that it exploded. The evidence is equally explicit and conclusive that the defendant's employé, Mr. Thomas, mixed nothing with it except magnesium, which does not add to the explosive character of the powder, and that he used it in the usual manner as he had so often done before. Did Mr. Thomas make a mistake and mix some dangerous explosive, instead of using the magnesium? There is nothing to show that he did, except the mere fact of the explosion. There is not even anything to show that there were any dangerous explosive chemicals in the store which might accidentally have been used.

No duty rested upon the defendant to test every package or charge of this powder before using it. It was manufactured, advertised, and labeled as ready for use and safe, and experience had shown that it was. In buying and using it, defendant exercised all the care the law requires. *Siegel* v. *Heating Co.*, 143 Mich. 484 (106 N. W. 1127). Neither was it customary for the users thereof to make such tests. One juror might guess that the trouble was with the powder, and might base the guess upon the fact that the powder marked "Ideal" was withdrawn from market thereafter, because defendant tried to buy some after the accident in order to make tests, but could not find any. Another juror might guess that it was most likely that something else besides magnesium was used by Thomas, the defendant's clerk, in mixing the powder. As above stated, there is nothing to support either theory except the fact of the explosion. Another juror might guess that someone had

tampered with the powder.    Others might have different theories.

I think the learned circuit judge correctly summed up the situation in directing a verdict, when he said:

"No evidence has been introduced establishing either the proximate or remote cause of this unfortunate accident.    If there is any person who can explain the mystery of this accident, he has not been produced, or at least he has given no testimony upon that subject.    It therefore remains a mystery how or what caused this explosion."

It is certainly as reasonable to suppose that in some way there was a defect in the powder of the package used caused by some neglect on the part of the manufacturer as it would be to suppose that the defendant by mistake furnished a dangerous explosive rather than the innocent material, magnesium, or that in some manner some dangerous explosive had become mixed with the magnesium used.    The former seems to me the more reasonable supposition, because the manufacturer used dangerous explosives in the manufacture of the powder, while there is no evidence, or attempt to introduce any, that the defendant kept or used any dangerous explosive which could by any possibility have become mixed with the magnesium or have been supplied instead of it.    There is no preponderance of evidence in favor of any theory advanced.    To submit such a case to a jury would be to turn them loose into a field of mere speculation with no evidence to guide them to the cause of the explosion, or the responsibility for it.

Furthermore, I think the declaration is clearly based upon the idea that the fault lay in the powder which the defendant had purchased and furnished for use on this occasion, and not upon any idea that the defendant had mixed a dangerous explosive with that purchased.    It appears from the record, as above stated, that this "Ideal Powder" was the same as that known as "Magic Powder," but that defendant did not know this when he stated to plaintiff's mother that the powder was a new

one which he had never used before, and that he thought there was something the matter with the powder. The declaration contains no intimation of a charge that the defendant had himself mixed some dangerous explosive with the commercial article, which he had a right to purchase and sell without testing, and there is no evidence that he did so.

Evidently the case was tried upon the theory that the fault lay in the original powder, and not in the magnesium with which it was mixed.

The judgment should be affirmed.

OSTRANDER and BROOKE, JJ., concurred with GRANT, J.